**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TALBOT BARNARD**, *et al.*, | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **VERIZON** | : | |
| **COMMUNICATIONS, Inc.**, *et al.*, | : | |
| **Defendants.** | : | **No. 10-1304** |

**M E M O R A N D U M**

PRATTER, J.                                                                JANUARY 31, 2011

INTRODUCTION

  This case arises out of the bankruptcy of Idearc, Inc. ("Idearc"), a former subsidiary of

Defendant Verizon Communications ("Verizon"). The Plaintiffs are former equity investors in

Idearc, which filed for Chapter 11 protection on March 31, 2009 in the United States Bankruptcy

Court for the Northern District of Texas. Their interest in Idearc was extinguished on December

21, 2009, when the Bankruptcy Court confirmed a reorganization plan pursuant to which Idearc

cancelled its existing common stock. The Plaintiffs are all members of an unofficial shareholder

group that became known as the Spencer *Ad Hoc* Equity Committee, which participated in – and

vehemently objected to – the terms of the Bankruptcy Court's reorganization plan.

  Idearc became separated from Verizon through a "spin-off" transaction in 2006. The

Spencer Committee alleges that Idearc's spin-off and its subsequent bankruptcy were elements of

an "elaborate fraudulent scheme," orchestrated mostly by Verizon, which unlawfully and without

compensation deprived the Committee members of their Idearc shares. The Committee further

claims that a second Defendant, J.P. Morgan Chase Bank ("JPMC" or "the Bank"), participated

in aspects of the alleged fraudulent scheme, particularly in its capacity as the administrative and

collateral agent for certain Idearc creditors, to whom new stock in the company was issued after its bankruptcy. The reorganized Idearc now goes by the name of SuperMedia, Inc.

The Committee's Second Amended Complaint sets forth seven claims. Count I alleges that Verizon violated the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* ("the Communications Act"); Counts II and III allege that both Verizon and JPMC violated Section 10(b) of the Securities Exchange Act ("the Exchange Act") of 1934 and Rule 10b-5 promulgated thereunder; Count IV alleges that both Verizon and JPMC committed common-law fraud; Count V alleges that JPMC committed conversion; Count VI alleges that both Verizon and JPMC violated the Committee members' constitutional rights, under the heading of a *Bivens* claim; and Count VII "reasserts" three of the Committee's first six claims under the heading of a "shareholder direct right of action." This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1367.

Verizon and JPMC have each filed a Motion to Dismiss the Second Amended Complaint, which if granted would dispose of all of the Spencer Committee's claims. For the reasons that are set forth below, each of these two Motions will be granted in full, and Counts I through VII of the Complaint will be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of these motions to dismiss, the facts alleged in the Second Amended Complaint are considered to be true. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). On that basis, the facts are as follows.

A "spin-off" is a transaction through which a corporation can divorce itself from a

subsidiary, creating a new and separate entity and ordinarily distributing complete ownership of that new entity to its own shareholders via a *pro rata* dividend. In late 2006, Verizon spun off its Yellow Pages publishing business, which became an independent company called Idearc.

In conjunction with this transaction, and before Idearc had become an independent company, two lender banks (J.P. Morgan Ventures and Bear Stearns & Co.), with JPMC acting as their agent, entered into an agreement pursuant to which they would trade approximately $7 billion in previously-held Verizon debt for commensurate Idearc debt. As a result, Idearc began its short life with substantial liabilities. Before its independence, Idearc also issued $2 billion in debt to Verizon itself, as partial consideration for the Yellow Pages operation and an exclusive publishing contract.[1] (Idearc also paid cash, and issued all of its own shares to Verizon, which duly distributed them to its own shareholders.) One immediate effect of the spin-off transaction was thus a notable reduction in Verizon's own indebtedness.

On March 31, 2009, less than three years after its spin-off, Idearc filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Texas ("the Bankruptcy Court") (Case No. 09-31828). The Plaintiffs in this matter are 17 individuals and one non-profit entity who claim to have held, in aggregate, approximately 6 million shares in Idearc on the day of its Chapter 11 filing.[2] It is not known – because it has not been pled in the Complaint – when or how or at what price any of the various Plaintiffs' shares were acquired.

---

[1]     At the time of the spin-off, Idearc obtained a 30-year exclusive contract to publish Verizon's Yellow and White Pages print directories.

[2]     The Plaintiffs are Talbott Barnard, Donald and Susan Biggerstaff, David Boon, Greg and Deb Boser, Thomas Bovet, Zhengxu and Ying Fang, Mark Hendrych, Bin Li, Thomas Martin, Middlebar Monestary (the non-profit entity), Jersey Nietubyc, Katherine Perino, Brian Spencer, Stephen Spencer and Charles Turk.

The triggering event for the instant lawsuit was the Bankruptcy Court's issuance, on December 21, 2009, of a Confirmation Order which confirmed a Plan of Reorganization for Idearc ("the Plan").[3]  Under the Plan and Order, Idearc canceled all of its stock – thus reducing the value of Plaintiffs' stake in Idearc to zero – and issued new shares to its creditors.  The Plan and Order created a Litigation Trust, which was assigned an exclusive right to pursue any claims that might lie against Verizon in connection with the spin-off and debt exchange.  The Plaintiffs concede that the sole beneficiaries of the Trust are Idearc's bankruptcy estate and creditors.

As Idearc shareholders, the Plaintiffs were considered parties in interest in the Idearc bankruptcy proceeding, and they participated actively in that matter under the heading of the "Spencer Committee," named for two of its members.[4]  The counsel for the Committee in the Idearc bankruptcy proceeding was Peter Talbot, who also represents its members in this matter. The Committee sought unsuccessfully to have Idearc's Chapter 11 petition dismissed, alleging, *inter alia*, that Idearc's bankruptcy was fraudulent, and that Idearc and Verizon had colluded to commit common-law and securities fraud.[5]  After the Bankruptcy Court issued the Confirmation

---

[3]     In evaluating a motion to dismiss, the Court may consider matters of public record, and may also take judicial notice of opinions, orders and decisions of other tribunals. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009); *see also* FED. R. EVID. 201.
          In this case, the Court must consider the Idearc Plan of Reorganization and the Confirmation Order, as these documents are referenced in, and integral to, the Second Amended Complaint.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[4]     The Committee's full name, the Spencer *Ad Hoc* Equity Committee, reflects the fact that it was not formally recognized as an equity committee by Idearc's bankruptcy trustee.

[5]     In denying the Spencer Committee's "emergency" motion to dismiss, the Bankruptcy Court observed that "to the extent the spin transaction is an alleged fraudulent transfer, that is a claim – as we have discussed numerous times before – owned by the debtor's estates."  Transcript of Hearing on Spencer Committee Emergency Motion to Dismiss Chapter 11 Petition (November 2, 2009) at 10, *In re Idearc Inc.*, Case No. 09-31828 (Bankr. N.D. Tex.),

4

Order, the Committee filed notice of appeal. It also filed motions that would have rescinded the Confirmation Order and stayed its implementation. These were denied on March 5, 2010.

The Spencer Committee filed this lawsuit on March 25, 2010, and has amended its Complaint twice. Although the Second Amended Complaint suffers from stylistic defects that render many of its allegations puzzling, an essential theory of the case is discernable. According to the Committee, the Idearc spin-off was "a massive, Enron-style debt off-loading" transaction, designed by Verizon to clean up its balance sheet and divest itself of its Yellow Pages business without paying the taxes that would attend an ordinary sale. The Committee asserts that Verizon saddled Idearc with "unsustainable" debt, so that the company was "insolvent" at its genesis. As the agent for two of Verizon's lenders, JPMC facilitated the transfer of Verizon's obligations to Idearc. All of this was done in the expectation that Idearc would soon declare bankruptcy and be recapitalized, with new shares of Idearc stock issuing to its creditors, JPMC's clients.

Given the central role of the Bankruptcy Court in crafting and approving the Plan of Reorganization, the Committee necessarily attacks the integrity of the Idearc bankruptcy. The Second Amended Complaint implies that there is some legal or perhaps logical inconsistency in awarding Idearc's causes of action against Verizon to a Litigation Trust, but barring shareholders from bringing derivative claims on behalf of Idearc or asserting other claims (such as fraudulent conveyance) generally reserved for creditors. It also attacks the valuation that Idearc presented in submissions to the Bankruptcy Court, describing it as "facially preposterous" and "so irrational that expert testimony in support of it should not be allowed." The Complaint suggests that the Bankruptcy Court ought to have held a trial before cancelling Idearc's common stock, during

Exhibit K to the Verizon Motion to Dismiss.

which the Committee could have challenged the 2006 Verizon-Idearc debt transaction.[6]

Verizon and JPMC have each filed a Motion to Dismiss the Second Amended Complaint. Both of the Defendants argue that the Complaint's securities and common-law fraud claims do not satisfy the applicable pleading requirements; that a *Bivens* claim cannot lie against a private defendant; and that the Committee's "shareholder direct right of action" merely reiterates other claims. In addition, Verizon maintains that the Complaint fails to specify any basis on which it might be liable to Committee members under the Communications Act; and JPMC attests that the Committee's conversion claim is *res judicata* and at any rate deeply flawed.

On September 20, 2010, the Spencer Committee filed a Motion for Summary Judgment as to Counts II, III, IV and VII of the Second Amended Complaint. This Motion asserts that the central thesis of the Complaint – *viz.*, that Verizon's transfer of debt to Idearc was invalid – has been "judicially admitted" by Idearc's litigation trustee in a separate lawsuit that the Litigation Trust has initiated against Verizon (*U.S. Bank Nat'l Assoc., Litig. Trustee of the Idearc, Inc., et al. Litig. Trust v. Verizon Communications, et al.*, Case No. 10-01842 (N.D. Tex. 2010)). The Court has not ruled on the Committee's Motion for Summary Judgment, and will not need to in light of its disposition of the Defendants' Motions to Dismiss.[7]

_____

[6] In other fora, the Spencer Committee has questioned whether the Bankruptcy Court had constitutional authority to cancel Idearc's common stock. The Committee has wisely avoided rehashing this argument in the instant litigation.

[7] As an analytical and practical matter, it makes sense to test the legal sufficiency of a complaint before addressing the question of whether there are material issues of fact.
The Court will not address the substance of the Motion for Summary Judgment at length in this opinion, but will note in relation to several of the arguments contained therein that: (1) arguments presented by the Idearc Litigation Trust in its own lawsuit *against* Verizon cannot be construed as "judicial admissions" *by* Verizon; (2) a plaintiff's motion for summary judgment cannot introduce new claims that were not pled in the complaint; (3) the Court is unaware of any

On January 10, 2011, the Court denied the Spencer Committee's request that this case be stayed pending the outcome of their appeal of the Bankruptcy Court's Confirmation Order to the Court of Appeals for the Fifth Circuit. The Court concluded that the Committee had not offered any "compelling" rationale for putting the matter in suspense, *Stadler v. McCulloch*, 882 F. Supp. 1524, 1527 (E.D.Pa. 1995), and observed, *inter alia*, that the success of the Committee's appeal of the Order will turn on legal questions that are largely distinct from those presented here.[8]

## LEGAL STANDARDS

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of a complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Twombly*, 127 S. Ct. at 1964-65 (2007) (*quoting Conley*, 355 U.S. at 47), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted).

---

"intentional bankruptcy" tort which can be maintained where the plaintiff has not alleged fraud with particularity; (4) the Motion does not address (let alone resolve) the pleading, standing and *res judicata* issues that had already been identified by the Motions to Dismiss when it was filed; and (5) this matter is neither a direct appeal from a bankruptcy order nor one filed by a litigation trustee, so the major cases that are cited and relied upon by the Motion are plainly inapposite.

[8]     In *Spencer Ad Hoc Equity Committee v. Idearc, Inc.*, Case No. 10-560 (N.D. Tex. August 18, 2010), a district court dismissed the Spencer Committee's appeal of the Confirmation Order, largely on the ground of equitable mootness (Docket No. 68).

As of this date, the Committee's subsequent appeal of the district court order is pending before the Court of Appeals for the Fifth Circuit as Case No. 10-10858. For more on the possible significance of that appeal for the disposition of this case, *see* fn. 30, *infra*.

Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... ." *Id.* at 1965 (citations omitted). To survive a motion to dismiss, a civil complaint must allege "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009) (confirming that *Twombly* applies to all civil cases).

The Court must accept the allegations in the complaint as true. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 127 S. Ct. at 1965 (courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). However, the Court does not need to accept as true a plaintiff's "unsupported conclusions and unwarranted inferences," *Doug Grant v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) *(citing City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or a plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997).

The Court will address special pleading requirements for securities and common-law fraud claims in its discussion of Counts II, III and IV, *infra*, but will note here that in assessing sufficiency of a claim pursuant to Section 10(b) of the Exchange Act, the court must "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss." *Tellabs, Inc. v. Makor*, 551 U.S. 308, 322 (2007).

## I.    The Communications Act

Count I of the Second Amended Complaint asserts a claim under Section 206 of the Communications Act, which regulates "common carriers" – a term of art that refers to certain regulated telecommunications firms.  Section 206 does not itself impose duties or restrictions upon common carriers, but instead creates a private right of action for persons who have been injured by a carrier's violations of one of the other specific provisions of the common-carrier chapter of the Communications Act.[9]

The  theory of Count I seems to be that by offloading debt onto Idearc, Verizon committed fraud; and because the offloaded debt had been incurred in part to pay licensing fees and to construct broadband and telephone networks, a cause of action must lie against Verizon under the Communications Act.  In the absence of any indication as to what other portion of the common-carrier chapter this conduct is supposed to have violated, the Court can discern no claim under Section 206.  The Communications Act regulates the telecommunications business; it does not provide a hook for suing common carriers for securities or common-law fraud.  In addition – and more fundamentally – the Complaint fails to cite any facts which would enable the Court to evaluate whether Verizon is a regulated common carrier.[10]  Count I will be dismissed.

---

[9]    "In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured ... ."  47 U.S.C. § 206.  *See also Frenkel v. Western Union Tel. Co.*, 327 F. Supp. 954, 958-59 (D. Md. 1971) (noting that a plaintiff seeking to invoke Section 206 must "establish[ ] the violation of *another provision* of the [relevant] chapter").

[10]    This cannot be taken for granted simply because Verizon is a communications company.  In fact, Verizon has asserted that it is not a common carrier, although several of its

## II.    Securities Fraud

Counts II and III of the Second Amended Complaint allege that Verizon and JPMC committed securities fraud.  The basic elements of a private action under both Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder are: (1) a material misrepresentation or omission; (2) *scienter* (*i.e.,* the intention to deceive, manipulate or defraud); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) "loss causation" (*i.e.*, a causal relationship between the misrepresentation or omission and the loss).  *McCabe v. Ernst & Young*, 494 F.3d 418, 424 (3d Cir. 2007) (*citing Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).[11]

All federal securities fraud litigation is governed by the Private  Securities Litigation Reform Act of 1995 ("PSLRA"), which Congress enacted "[a]s a check against abusive litigation by private parties ... ."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). The PSLRA imposes two "exacting and distinct" pleading requirements for securities fraud actions.  *In re Aetna Sec. Litig.*, 617 F.3d 272, 277 (3d Cir. 2010).  First, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15

---

subsidiaries are.  *See* Verizon Motion to Dismiss at 27, fn. 23.

[11]        Section 10(b) forbids (1) the "use or employ[ment of] ... any manipulative or deceptive device or contrivance," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of [SEC] rules and regulations."  15 U.S.C. § 78j(b) (2006).
        Securities & Exchange Commission ("SEC") rules, in turn, make it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" in connection with the purchase or sale of a security.  17 C.F.R. § 240.10b-5(b).

U.S.C. § 78u-4(b)(1)).  Second, "the complaint shall, with respect to each act or omission alleged

to violate this title, state with particularity facts giving rise to a strong inference that the

defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)).[12]

### A.    Count II

Count II alleges that Verizon and JPMC violated Section 10(b) and Rule 10b-5 by

planning and orchestrating the spin-off transaction, and by failing to disclose in "applicable

registration statements" that the true purpose of this transaction was not to create a viable new

corporation but rather to offload Verizon debt and transfer ownership of Idearc to its creditors,

the lender banks for whom JPMC served as an agent.  The Committee asserts that Verizon and

JPMC intentionally concealed information relating to Idearc's solvency, or lack thereof – *e.g.*, the

alleged fact that Idearc was "insolvent" at its creation – and therefore perpetrated a "fraud on the

market" by artificially inflating the price of Idearc shares.  It also asserts, albeit generally, that

Verizon and JPMC caused losses suffered by the Committee members, who acted in reliance on

unspecified registration statements.

The Second Amended Complaint does not specify any particular registration statement or

other SEC filing which is alleged to have omitted material facts regarding the health of Idearc.  It

does not attribute any statements or omissions to Verizon or JPMC particularly.[13]  It does not say

---

[12]      While the special pleading requirements of FED. R. CIV. P. 9(b) also apply to
securities fraud claims, the PLSRA's requirements with respect to *scienter* are more stringent
than those of Rule 9(b), inasmuch as Rule 9(b) allows state of mind to be alleged generally and
the PSLRA requires specific factual pleading.  *Gargiulo v. Isolagen*, 527 F. Supp.2d 384, 390-91
(E.D. Pa. 2007) ("the PSLRA's particularity requirement for *scienter* ... supersedes Rule 9(b) as
it relates to Rule 10b-5 actions").

[13]      Indeed, the Complaint does not suggest why JPMC might have ever filed any
statement with the SEC regarding Idearc stock.  This is notable inasmuch as there is no private

when any of the Committee members acquired their Idearc stock – or even whether they bought their shares or obtained them through some other means (*e.g.*, via the distribution of Idearc stock to existing Verizon shareholders in the wake of the spin-off). It does not assert that any of the Committee members ever sold any of their Idearc stock.

A failure to allege specific misleading statements or omissions, and to attribute them to particular defendants, is fatal to any securities fraud claim. The PSLRA requires that plaintiffs specify with particularity all statements or omissions that are alleged to have been misleading, and the reasons why each was misleading. Moreover, where a securities fraud claim is brought against multiple defendants, the complaint must note the provenance of alleged misstatements or omissions, so that it is clear which defendant is alleged to have made them. A complaint cannot ascribe misstatements to two or more defendants without providing any basis for doing so.[14]

The absence of any information about when and how shares stock were acquired, and when or if they were sold, is similarly deadly – particularly in the absence of similar information regarding alleged misrepresentations or omissions. The absence of dates regarding purchases and sales makes it impossible to determine whether a plaintiff could have relied upon any particular statement, and thus whether there was any causal link between the defendant's conduct and the

---

cause of action for aiding or abetting securities fraud, *In Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008), and our Court of Appeals has rejected the "group pleading" doctrine, which might allow an action against parties merely involved in preparing a public statement. *Winer Family Trust v. Queen*, 503 F.3d 319, 335-338 (3d Cir. 2007).

[14]     *In re Nutrisystem, Inc. Sec. Litig.*, 653 F. Supp.2d 563, 576-77 (E.D. Pa. 2009) (specificity is required in the identification of omissions and as to the defendants responsible); *see also Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp.2d 576, 594 (E.D. Pa. 2009) (dismissing complaint because it "often lumps defendants together and makes vague allegations of defendants' conduct"); *Winer Family Trust*, 503 F.3d at 335 (noting that omissions must be alleged "with particularity as to the defendant").

plaintiff's injury.[15]  "A statement cannot be fraudulent if it did not affect an investment decision

of the plaintiff," *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993), so without

any information about the timing of such decisions there cannot have been fraud.  In addition to

some chronology, the means of acquisition and disposal of shares must also be pled, since Rule

10b-5 creates a private right of action only for those who purchase or sell securities, as opposed

to those who merely hold them.  *Nutrisystem*, 653 F. Supp.2d at 580; *Blue Chip Stamps v. Manor*

*Drug Stores*, 421 U.S. 723 (1975) (establishing that protections of Section 10(b) and Rule 10b-5

can only benefit an actual "purchaser or seller" of securities).

The Court will not, because it need not, delve into other arguments presented by Verizon

and JPMC, although it will note that several of them are compelling.  (Among these are that the

Second Amended Complaint fails to plead facts giving rise to a strong inference that Verizon or

JPMC acted with *scienter*; and that its assertions concerning Idearc's fitness at various points in

time are contradictory, or at least confusing.)  Even a grand theory of wrongdoing cannot provide

the basis for a securities fraud claim where it is based on a general allegation that undifferentiated

defendants painted a misleading financial picture, and includes virtually no information regarding

any investor's acquisition or disposal of stock.  For this reason, Count II will be dismissed.

---

[15]    To give one concrete example of the problem posed by the absence of dates, the
Complaint alleges that Verizon's "true intent" to "permit a near-term recapitalization" of Idearc
was not revealed at the time of the Idearc spin-off, but *was* admitted in Verizon's 2007 Annual
Report.  But Idearc filed for bankruptcy in 2009, and the Complaint alleges no facts which would
indicate that any of the Committee members purchased Idearc stock *before* Verizon filed its 2007
10-K – which allegedly revealed a major element of its "fraudulent scheme."
        The Complaint also establishes no basis for presuming reliance.  Under a theory
of "fraud on the market," plaintiffs may establish a presumption of reliance where they can show
that misstatements or omissions may have affected the price at which they bought or sold a stock.
But the Committee fails to plead an efficient and impersonal market for Idearc stock or any date
or time of purchase or sale.  *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 208 (E.D. Pa. 2008).

### B.     Count III

Count III asserts that Verizon and JPMC violated Rule 10b-5 by trading in Idearc stock on the basis of material nonpublic information – namely, the alleged existence of a "preexisting plan" to permit the recapitalization of Idearc after a period of only two years.

Section 20A of the Exchange Act provides that an insider who trades stock "while in possession of material, nonpublic information" is liable to those who traded contemporaneously with the insider.[16] 15 U.S.C. § 78t-1(a). All claims under Section 20A are derivative, requiring proof of a separate underlying violation of the Exchange Act. *In re Advanta*, 180 F.3d 525, 541 (3d Cir. 1999) (*citing Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir. 1994)) . The elements of a Section 20A action are: "(1) trading by a corporate insider; (2) a plaintiff who traded contemporaneously with the insider; and (3) that the insider traded while in possession of material nonpublic information, and thus is liable for an independent violation of the Exchange Act." *In re Merck & Co. Sec. Litig.*, 2009 U.S. Dist. LEXIS 78313, *7 (D.N.J. September 2, 2009) (internal quotations and citations omitted).

The Second Amended Complaint does not allege facts that might support a private action for insider trading. It does not allege with any specificity that Verizon and JPMC actually traded in Idearc stock. (Certainly it does not offer trade dates or prices or volumes; and if the theory of Count III is that the Idearc spin-off and bankruptcy might have constituted some species of trade, this idea goes unexplained and unsupported.) Nor does it allege that Committee members traded contemporaneously with either Verizon or JPMC – or indeed provide any real information about

---

[16]     Count III does not actually mention Section 20A, but this provision offers private plaintiffs a means of enforcing the insider trading restrictions provided by Section 10(b) and Rule 10b-5. *DeMarco v. Robertson Stephens Inc.*, 318 F. Supp. 2d 110, 126 (S.D.N.Y. 2004).

*any* trading by Committee members.  Count III will thus be dismissed.[17]

## III.    Fraud and Undue Influence

Count IV of the Second Amended Complaint alleges that both Verizon and JPMC committed common-law fraud and "undue influence," which is not an independent cause of action but a defense to contract formation.[18]  The Court will discuss each allegation in turn.

### A.    Fraud

The theory of fraud presented in Count IV is reminiscent of the Committee's securities fraud claims.  The Complaint emphasizes the alleged fact that Verizon and JPMC concealed debt transfers from Verizon to Idearc, and reiterates the allegation that the true but concealed purpose of the spin-off transaction was to offload Verizon debt.  The allegations in Count IV flow like a Joycean stream of consciousness – but when unpacked, they provide no more information than Count II as to particular misstatements or omissions or actual reliance thereupon.

The elements of common-law fraud are "almost identical" to those of claims under Section 10(b) and Rule 10b-5.  *Majer v. Sonex Research, Inc.*, 541 F. Supp. 2d 693, 713 (E.D. Pa. 2008) (internal quotations omitted).  To state a claim for common-law fraud, a plaintiff must show that the defendant made a material misrepresentation with the intent that it would be relied

---

[17]    In light of the fundamental failure of the Second Amended Complaint to plead contemporaneous trading, the Court need not address the question of whether the "preexisting plan" regarding Idearc's recapitalization actually constituted material inside information.

[18]    *See, e.g., Snyder v. Rosenbaum,* 215 U.S. 261 (1909) (Holmes, J.) (where one party to an agreement had threatened the other to coerce assent, the other had been subjected to an "undue influence" and no contract existed); *but see Biddle v. Johnsonbaugh*, 664 A.2d 159, 162 n. 1 (Pa. Super. 1995) (in Pennsylvania, the term "undue influence ... is used mostly in will contests" rather than contract disputes).

upon, and that the plaintiff did actually rely upon that misrepresentation to his detriment. *See, e.g., Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994); *Overall v. Univ. of Pa.*, 412 F.3d 492, 498 (3d Cir. 2005) (summarizing Pennsylvania law); *see also* RESTATEMENT (2D) TORTS § 525.

As the Court has already noted, fraud must be pled with particularity. FED. R. CIV. P. 9(b). Practically speaking, this means that a complaint alleging fraud must specify who made a misrepresentation to whom and the basic content of that misrepresentation, and must also include relevant details – regarding, *e.g.*, date, place or time – or otherwise inject precision or a measure of substantiation into the allegations. *See, e.g., Lum v. Bank of America*, 361 F.3d. 217, 224 (3d Cir. 2004) (internal quotations and citations omitted).

To the extent that Count IV seeks recovery on the ground that Committee members purchased Idearc stock in reliance upon any material statement or omission by either Verizon or JPMC, it fails for the same reasons as Count II. The Complaint fails to present a narrative that might enable a finder of fact to identify any action taken by any Committee member in reliance upon a specific misstatement or omission attributable to one particular defendant or the other.[19] Another theory of fraud may be implicit in the Committee's allegation of "undue influence."

## B.    Undue Influence

As noted above, "undue influence" is not a tort or an independent cause of action, but

---

[19]    Assuming that Count IV alleges fraud based on an omission rather than a misstatement, it is also worth noting that the Second Amended Complaint fails to plead that Committee members enjoyed a fiduciary or other special relationship with Verizon or JPMC. *See Bucci v. Wachovia Bank*, 591 F. Supp.2d 773, 782 (E.D. Pa. 2008) ("omission is actionable as fraud only where there is an independent duty to disclose the omitted information").

Count IV is also deficient to the degree that it attempts to assert reliance on the basis that Verizon and JPMC perpetrated a "fraud on the market." *Aubrey v. Sanders*, 346 Fed. Appx. 847, 850 (3d Cir. 2009) ("no state courts have adopted the [fraud on the market theory], and thus direct reliance remains a requirement of a common law securities fraud claim").

rather a defense to contract formation – namely, a ground for rescission "where the complaining party [was] compelled to agree to the contract by means of a wrongful threat which precludes the exercise of its free will." *Baratta v. Kozlowski*, 94 A.D.2d 454, 458 (N.Y. App. Div. 1983).

Count IV of the Second Amended Complaint seems to suggest that the Spencer Committee has a cause of action based on its allegation that Verizon and JPMC coerced Idearc into taking on Verizon debt pursuant to a written agreement.  If the aspiration represented by this "undue influence" claim is that the Court might cancel some of the debt that Idearc incurred prior to the spin-off, it is not cognizable.  First, the appropriate treatment of any claims that might arise out of the 2006 Verizon-Idearc debt exchange is a matter that is plainly within the ambit of the Bankruptcy Court's Plan and Confirmation Order.  The Order is a final judgment on the merits, given *res judicata* effect, and a bankruptcy court's rulings may not be subjected to collateral attack in federal district court.[20]  Even assuming the validity of the Committee's theory of undue influence (which is thinly pled), this Court could not grant rescission of any pre-bankruptcy debt-related agreement between Idearc and Verizon without challenging the terms of the Confirmation Order and thus introducing a serious risk of conflicting judgments.[21]

Even assuming, *arguendo*, that this Court might have the power to reverse a pre-

---

[20]     *See, e.g., In re Flushing Hosp. and Med. Ctr.*, 395 B.R. 229, 244 (Bankr. E.D.N.Y. 2008); *In re Cross Media Mktg. Corp.*, 367 B.R. 435, 447 (Bankr. S.D.N.Y. 2007); *see also Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) (so long as bankruptcy court injunction has more than a "frivolous pretense to validity," it cannot be collaterally attacked in district court).

[21]     "Even [where] an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment." *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972).
        The Court will need not reach the issue of whether an action seeking rescission would be equitably moot, although that question would surely be relevant in this context.

bankruptcy debt agreement, it is unclear how the Committee members would have standing to seek such an outcome. They were not parties to any agreement between Idearc and Verizon or JPMC. And even if Idearc's own potential claims against Verizon had not been reserved for the Litigation Trust, the Commitee members were not, by their own admission, shareholders when the debt exchange took place (*i.e.*, prior to the spin-off transaction), so one would certainly question their standing to pursue a derivative claim.[22]

     For all of the reasons identified above, Count IV will be dismissed.


**IV.    Conversion**

     Count V of the Second Amended Compliant alleges that JPMC unlawfully converted the Spencer Committee members' equity interest in Idearc through its "dominance" of the Idearc bankruptcy proceeding. It further claims that JPMC, in concert with Idearc, extinguished the Committee members' equity interest "prematurely" – after the Bankruptcy Court had issued the Confirmation Order, but before it had denied either of the Committee's post-judgment motions or there had been any disposition of the Committee's appeal. As the Bankruptcy Court has already explained to the Committee, neither of these theories of conversion is viable.[23]

---

[22]     Under Delaware law, applicable here by virtue of the fact that Idearc is a Delaware corporation, "[i]n any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains ... ." 8 Del. C. § 327.

[23]     "From the [Bankruptcy] Court's perspective, the debtors didn't convert the Spencer Committee's property. The debtors proposed a plan that proposed to cancel existing equity interest in Idearc based on what the debtors believed to be a lack of value to reach the interests of old equity. The Court confirmed that plan. And because there was no stay pending appeal, the debtors were fully entitled to proceed to implement that plan [immediately], which they did." Transcript of Hearing on Spencer Committee Motion for Relief and Motion to Stay

The Committee's precise theory of conversion is unclear, but appears to be that JPMC manipulated or otherwise improperly influenced the Bankruptcy Court, so that the Confirmation Order, although facially valid, was actually unlawful and should be ascribed to JPMC rather than the Bankruptcy Court. Leaving aside the fact that the Complaint does not support this imprudent accusation by reference to facts, a confirmation order is a final judgment, and the proper avenue for presenting objections to such a judgment is through direct appeal.[24]

Assuming, as this Court must, the validity of the Confirmation Order, the Complaint plainly fails to plead conversion. One element of the tort is the plaintiff's right to immediate possession of the property that is alleged to have been converted. *Hunter v. Sterling Bank*, 588 F. Supp.2d 645, 650 (E.D. Pa. 2008). In this case, the "conversion," so-called, was actually a court order extinguishing the Committee members' legal entitlement to their Idearc shares. As for the assertion that JPMC canceled the equity interest "prematurely," the Complaint has not alleged the existence of any stay which might have barred the Bank from acting in accordance with the Order immediately, and the Bankruptcy Court record indicates that no such stay was in effect.[25]

Given that Count V constitutes a collateral attack on the Bankruptcy Court's Confirmation Order, and that it is based on a theory of conversion which is implausible as pled and which was explicitly rejected by the Bankruptcy Court, it will be dismissed.

---

(March 1, 2010) at 79-82, *In re Idearc Inc.*, Case No. 09-31828 (Bankr. N.D. Tex.), Exhibit H to the JPMC Motion to Dismiss.

[24]     *See* cases cited at fn. 20, *supra*.

[25]     *See* fn. 23, *supra*. There is no automatic stay pending appeal of bankruptcy judgments. *In re Tex. Equip. Co.*, 283 B.R. 222, 229 (N.D. Tx. 2002) (*citing In re Bleaufontaine Inc.*, 634 F.2d 1383, 1389-90 (5th Cir. 1981)).

## V.     The *Bivens* Claim

Count VI asserts a private cause of action grounded in the Spencer Committee's allegation that Verizon and JPMC infringed on the Committee members' federal constitutional rights.  The Supreme Court recognized a private cause of action for constitutional violations in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). It is well established, however, that *Bivens* claims cannot be asserted against private entities such as corporations.  *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001)*; see also Tare v. Bank of America,* 2009 U.S. Dist. LEXIS 23125, *26 (D.N.J. March 24, 2009) ("since [deciding] *Bivens*, the Supreme Court has rarely extended [the scope of its central holding], and has never done so to reach the action of private parties").  Count VI must therefore be dismissed.


## VI.     "Shareholder Direct Right of Action"

Count VII, directed against both Verizon and JPMC, is not an independent claim. Instead, it asserts that the Bankruptcy Court's creation of a Litigation Trust for the benefit of Idearc's bankruptcy estate and its creditors entitles Idearc's former equity investors to bring a "direct right of action" for fraud against both Verizon and JPMC.  Count VII thus "reasserts" the fraud and undue influence claims already presented in Counts II, III and IV.

The Complaint does not make clear how the creation of the Litigation Trust is supposed to have bestowed any rights upon the Spencer Committee members, since the members are not creditors but former shareholders.[26]  The Complaint implies that the fact that the Bankruptcy

---

[26]     The Spencer Committee acknowledges that the beneficiaries of the Litigation Trust are Idearc's bankruptcy estate and certain creditors; indeed, this is one of the grounds upon which it objected to the Bankruptcy Court's Plan and Confirmation Order.

Court created a Litigation Trust and awarded it the right to sue Verizon in relation to the spin-off transaction means that the Bankruptcy Court was endorsing a fraud claim against Verizon, which is plainly an unwarranted assumption. It also suggests that the rights of equity investors must be identical to those of creditors – on the stated ground that "no basis exists" for preventing former shareholders from bringing any claim left open to holders of debt – but this argument is based on a category error and elides one of the elemental distinctions in corporate and bankruptcy law.[27]

The only substantive accusations in Count VII are merely reiterations of claims previously presented, and it can thus be dismissed as a devoid of active content.[28]

## VII.     Other Grounds for Dismissal

The Second Amended Complaint is alternately discursive and conclusory, overflowing with disappointment and indignation but lacking essential dates and facts. It is weighted down with inapposite citations and implausible legal argumentation, but fails to precisely describe the admittedly complex transactions that are its subject. In light of the substantive weakness of the

---

[27]     The debt-equity distinction is not merely conceptual, but is reflected in the behavior of securities issuers and investors. "Equity investments entail more risk and thus offer a commensurately greater rate of return than that which one would expect from a lower-risk debt investment." *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 260 n.8 (3d Cir. 2008). One of the risks associated with equity investment is that the Bankruptcy Code mandates that debt receive a higher priority than equity in distribution. *See* 11 U.S.C. § 726.

[28]     Verizon suggests that the Spencer Committee's unstated goal in asserting that the Confirmation Order "established" the right of Idearc's equity investors to bring any of the causes of action assigned to the Litigation Trust is to maneuver around the general rule that shareholders (as opposed to creditors) lack standing to bring an action for fraudulent conveyance.

Whatever the merits of this theory, the Court is not dismissing Count VII on the ground that it attempts to sneak into the Complaint an improper fraudulent conveyance claim, but rather because it fails to state any claim at all.

Complaint, however, the Court need not consider the portion of JPMC's Motion that seeks the dismissal of parts of the Complaint pursuant to FED. R. CIV. P. 2(f), 8(a)(2) and 10(b).

## VIII. Dismissal With Prejudice

Although this Court shall "freely give leave to amend where justice so requires," FED. R. CIV. P. 15(A), the Supreme Court has identified circumstances under which it may be appropriate for such leave to be denied. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). Among the reasons that a claim might be dismissed with prejudice are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.; see also Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 166 at fn. 28 (3d Cir. 2004) (district court properly dismissed claims with prejudice where the district court found that further amendment would be futile); *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (district court properly dismissed claims without prejudice where the district court found that further amendment would result in undue prejudice to defendants).

The Court has determined that all of the Spencer Committee's claims against both Verizon and JPMC should be dismissed with prejudice. The Committee has already amended its Complaint twice. The Court has not previously evaluated the Committee's claims in the context of a motion to dismiss, but given that the Committee has repeatedly failed to present a cognizable claim against either Defendant, it would be futile to allow it another opportunity to amend.[29] The

_____

[29]    "Futility is governed by the same standard of legal sufficiency that applies under Rule 12(b)(6)." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000) (*citing In re Burlington Coat Factory Secs. Litig.,* 114 F.3d 1410, 1435 (3d Cir. 1997)). In other words, amendment would be

Complaint presents some claims which are manifestly inconsistent with statutory and case law; others which appear to be premised on a fundamental misunderstanding of the relationship between various tribunals; and others for which the facts alleged in the Complaint plainly provide no legal basis. As a result, further amendments to the Second Amended Complaint would prejudice Verizon and JPMC "by forcing them to continue to respond to legal theories that are without basis, and which indeed suffer from several layers of deficiency." *Vurimindi v. Fuqua Sch. of Business*, 2010 U.S. Dist. LEXIS 88094, *51 (E.D.Pa. August 25, 2010).[30]

---

futile if "the complaint, as amended, would [still] fail to state a claim upon which relief could be granted." *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000).

In this context, the Court will also observe that the Committee's Motion for Summary Judgment – filed months after the Motions to Dismiss – evinced a complete failure on the part of counsel to appreciate the seriousness of the Defendants' Motions, or to assimilate and respond to any of the compelling arguments presented therein. *See* fn. 7, *supra.*

[30]    The Court is aware of the possibility that the Court of Appeals for the Fifth Circuit will render a judgment in the Spencer Committee's direct bankruptcy appeal that might alter some terms of the Plan of Bankruptcy and Confirmation Order. This is not, however, an impediment to dismissing the entire Second Amended Complaint with prejudice.

No new bankruptcy order could affect the viability of the Committee's claims under the Communications Act (Count I) or *Bivens* (Count VI); nor could it save the securities and common-law fraud claims (in Counts II, III and IV), which are being dismissed because they fall woefully short, in numerous respects, of the relevant pleading standards.

To the extent that Committee's "undue influence" argument (from Count IV) seeks rescission of a pre-bankruptcy agreement entered into by Idearc, direct appeal was always the only way that the Committee might obtain the desired relief. This also applies to conversion (Count V), which is a collateral challenge to the Bankruptcy Court's Order – and which will thus be moot to the extent that the theory undergirding it is embraced by the Court of Appeals.

Finally, Count VII ("shareholder direct right of action") appears to be nothing more than a legal argument. It is devoid of content, so its dismissal with prejudice will not affect the substantive rights of the Committee members, regardless of the outcome of their appeal.

**CONCLUSION**

The Spencer Committee's Second Amended Complaint fails to state any claim against Verizon or JPMC upon which relief can be granted, and Counts I-VII of the Second Amended Complaint will therefore be dismissed. An Order to this effect follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE